FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

JUN 15 2015

CLERK_____
SO. DIST. OF GA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

EDWARD LEE PARRISH, )
)
Claimant, )
)
v. ) Case No. CV414-108
)
CAROLYN W. COLVIN, )
*Commissioner of Social Security,* )
)
Defendant. )

## REPORT AND RECOMMENDATION

Edward Lee Parrish seeks review of the Social Security Administration's adverse ruling on his claim for disability insurance benefits and Supplemental Security Income. Doc. 3. His claims were denied both initially and upon reconsideration, and he exhausted his administrative appeals. Doc. 17-2 at 6, 22 & 26. Parrish now argues that the Commissioner erred in reaching her decision. Doc. 1.

### I. STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether her "conclusion, as a whole, [is] supported by substantial evidence in the record." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "Substantial evidence is something 'more than a mere

scintilla, but less than a preponderance.'" *Id.* (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (internal quotation and citation omitted)). This review is limited. The Court cannot "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (second alteration in original) (quoting *Bloodworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). So long as there is "'such relevant evidence as a reasonable mind might accept as adequate to support [the Commissioner's] conclusion[,]'" affirmance in this Court is mandatory. *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also* 42 U.S.C. § 405(g).

## II. ANALYSIS

Parrish challenges the Commissioner's decision on two grounds. First, he argues that she erred in concluding that he had waived his right to appear at his hearing. Doc. 18 at 1. Second, he contends that the Commissioner's finding of no severe medically determinable impairment is not supported by substantial evidence in the record. *Id.*

### A. WAIVER

The Commissioner found that Parrish had constructively "waived his right to appear and present evidence at the hearing." Doc. 17-2 at 22. A regulation known as "HALLEX I-2-4-25(D) governs when an ALJ can consider a claimant's failure to appear as a constructive waiver of his right to appear at a hearing." *Starr v. Astrue*, 2008 WL 4402195 at * 3 (E.D. Mo. Sept. 24, 2008). This guideline "permits . . . an ALJ to make a finding of constructive waiver . . . 'if the representative is unable to find the claimant, the notice of hearing was mailed to the claimant's last know[n] address, and the contact procedures of 20 CFR 404.938 and 416.1438 have been followed.'" *Id.* (quoting HALLEX I-2-4-25(D)). If a claimant requests a hearing but does not appear, "the ALJ may choose to proceed with the hearing, accepting the testimony of the witness(es) and allowing the appointed representative to question the witness(es) and make arguments on the claimant's behalf.'" *Carpenter v. Colvin*, 2014 WL 4637085 at * 2 (N.D.N.Y. Sept. 16, 2014) (quoting HALLEX I-2-4-25(D)(2)(b)). In such a situation, however, the ALJ is to issue "a 'Request to Show Cause for Failure to Appear . . . to the claimant to ask why he or she did not appear at the scheduled hearing

3

and whether a supplemental hearing should be held.'" *Id.* (quoting HALLEX I-2-4-25(D)(2)(b)).

On August 31, 2011, Parrish requested a hearing before an ALJ. Doc. 17-4 at 21. On September 16, 2011, the Social Security Administration (SSA) sent a letter to Parrish's last known address acknowledging his request. *Id.* at 24. On March 14, 2012, the SSA sent a Notice of Hearing to Parrish's last known address, advising him of the date, time, and location of the scheduled hearing. *Id.* at 31. Finally, on March 21, 2012, it sent a Notice of Hearing Reminder to Parrish's last known address. *Id.* at 47. This reminder warned Parrish that "[i]f [he] d[id] not appear at th[e] hearing, and d[id] not provide a good reason why [he] did not appear, the [ALJ] w[ould] **dismiss** [his] request for hearing without further notice." *Id.* (emphasis original).

Despite these notices, however, Parrish failed to appear at his hearing. *See* Doc. 17-2 at 32 (Hearing Transcript). As a result, the ALJ issued a Notice to Show Cause for Failure to Appear. Doc. 17-4 at 55. This notice again warned that if Parrish "d[id] not show good cause, [the ALJ] w[ould] dismiss [his] request for hearing." *Id.*

4

Parrish, however, still failed to respond. His representative did, and offered the following as good cause for Parrish's failure to appear: (1) he suffers from mental health issues; (2) he is homeless and, as a result, does not have a consistent address or phone number; and (3) the representative's last contact with him was through Parrish's mother, on March 28, 2012. Doc. 17-4 at 61 (Letter from Kathleen Flynn to F. Jefferson Hughes, Administrative Law Judge). The ALJ considered the representative's response, but concluded that the offered reasons did not amount to good cause warranting a supplemental hearing. Hence, he found that Parrish had waived his right to appear and present evidence. Doc. 17-2 at 22.

Parrish now argues that "the criteria to find constructive waiver were not present" because his representative was able to locate him. Doc. 18 at 4. But the record does not support that contention. Indeed, there is no indication that his representative was ever able to contact him directly. Rather, it appears that she was only in contact with third parties, and there is no indication in the record that any of the communications ever actually reached Parrish. Doc. 17-2 at 32 ("Your Honor, we have spoken to several third-party contacts."); doc. 17-4 at 61

("Our last correspondence was with the client's mom who lives in Savannah, GA . . . ."). Contrary to Parrish's contention, the record shows that he was "completely out of contact with counsel and the ALJ and fail[ed] to respond to the show cause order" -- the exact situation that fits "[t]he language of the HALLEX guideline," thus enabling the ALJ to exercise his discretion "to find constructive waiver." *See Starr*, 2008 WL 4402195, at * 3. The ALJ therefore correctly concluded that the prerequisites for finding a constructive waiver were present.

Parrish nevertheless contends that the waiver finding is incorrect because he provided good cause warranting the grant of a supplemental hearing. Doc. 18 at 4. The Court rejects this argument. "Under HALLEX, good cause for failing to appear at a scheduled hearing exists, as relevant here, when an unforeseeable event occurred that did not provide the claimant or the appointed representative enough time to notify the ALJ and request a postponement before the scheduled hearing." *Carpenter*, 2014 WL 4637085 at * 3. Parrish's most serious reason for failing to appear is that he was attending his sister's funeral in Savannah, Georgia. *See* doc. 17-4 at 61 (Letter from Kathleen Flynn to F. Jefferson Hughes, Administrative Law Judge). But that funeral

was held on March 28, 2012 -- five days before his scheduled hearing -- and there is no indication why Parrish could not be in Atlanta for the hearing, or why there was not enough time to notify the ALJ of the need for a postponement. Parrish also conclusorily argues that good cause existed for holding a supplemental hearing, because he suffers from mental health issues. *See* doc. 18 at 4-5. Yet, he fails to show how any possible mental health issues prevented him from appearing at his hearing.

The burden was on Parrish "to show good cause for his failure to attend the hearing." *Rodriguez v. Astrue*, 2011 WL 1085528 at * 4 (S.D. Fla. Mar. 1, 2011), *adopted*, 2011 WL 1004596 (S.D. Fla. Mar. 21, 2011). "The ALJ properly concluded that [Parrish] failed to meet his burden to establish good cause for his failure to attend the hearing and that [Parrish] constructively waived his appearance at the hearing." *Id.*

### B. MEDICAL IMPAIRMENT

In determining Parrish's entitlement to disability insurance benefits and supplemental security income, the ALJ applied the five-step evaluation process prescribed in the Social Security Regulations. *See* Doc. 17-2 at 23. That process asks:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

The ALJ first determined that Parrish had not engaged in substantial gainful activity since July 1, 2008. Doc. 17-2 at 24. He then stopped at step two because Parrish failed to substantiate the existence of a severe medically determinable impairment. *Id.* at 25. Parrish alleged both physical and mental impairments, but the record failed to support either. Thus, he suffered from no severe medically determinable impairment. *Id.* at 25-26.

Parrish now insists that he prevailed at least on the mental impairment leg and faults the ALJ's finding as unsupported by substantial evidence -- the ALJ failed to provide a rationale for disregarding plaintiff's I.Q. scores in the record. Doc. 18 at 7. That

argument fails because, even assuming he satisfies Step 2, Parrish failed in his initial burden to allege and show mental retardation (called intellectual impairment today)[1] at the hearing or in prior filings, doc. 17-2 at 32-37, and the ALJ properly found that all he tendered were "old school records which do not show any evaluations or acceptable tests." *Id.* at 25. Hence, he would not make it past Step 3.

The Court preliminarily notes that it was Parrish's initial burden to advance his mental retardation claim, not the Commissioner's. *Charles v. U.S. Com'r of Soc. Sec.*, 2015 WL 2084665 at * 8 (W.D. La. May 4, 2015).[2] That means he had to adduce evidence (*e.g.*, a diagnosis

---

[1] In 2013 the SSA's Listing of Impairments replaced the term "Mental Retardation" with "Intellectual Disability." *Compare* 20 C.F.R. § 404, Subpt. P, App. 1, Listing 112.05 (2013) with *id.* (2012).

[2] The SSA deploys various regulations for assessing retardation-based evidence:

20 C.F.R. Part 404, Subpart P, Appendix I, Listing 12.05 provides:

**Mental Retardation**: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

...

of mental retardation) showing that he actually suffers from mental retardation. *Id.* at * 8. Represented by counsel, he presents no valid reason for failing to make that showing. Nor is it enough to reiterate his allegation (made by his *attorney* at the hearing that Parrish waived) that he had received "poor grades." Doc. 17-2 at 34. Unsurprisingly, his brief fails to indicate what more should have been developed evidence-wise. Doc. 18 at 5-7.

---

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional significant work-related limitation or function[.] (emphasis added).

*Charles*, 2015 WL 2084665 at * 8. As the *Charles* court explains:

The listings set out at 20 C.F.R. § 404 are descriptions of physical and mental illnesses and abnormalities which are categorized by the body system they affect. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley* 110 S.Ct. 885, 891 (1990); 20 C.F.R. §§ 404.1525, 416.925. Thus, a finding that a claimant's impairment satisfies a listing compels a finding of disabled without any further analysis. Listings criteria are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). A mere diagnosis of a condition will not suffice. The claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." §§ 404.1525(d), 416.925(d). The burden of proof *rests with a claimant* to provide and identify medical signs and laboratory findings that support all criteria for a Step 3 listing determination. *Sullivan*, 110 S.Ct. at 891. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).

*Id.* (emphasis added).

On these grounds alone, then, the ALJ's decision is supported and the Commissioner therefore must be affirmed. *Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005) ("Street did not list any mental impairment or intellectual functioning issues in his application for SSI benefits, nor did he testify at his hearing that he suffered from any intellectual or mental impairments that would prevent him from working. This failure alone could dispose of his claim, as it has been persuasively held that an administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.") (quotes omitted); *Terrell v. Colvin*, 2015 WL 328844 at * 9 (S.D. Ala. Jan. 26, 2015) ("Given the fact that Plaintiff did not allege mental retardation in her application or at the hearing and given the dearth of evidence indicating the existence of mental retardation, the ALJ had no obligation to consider this impairment or to order a consultative mental examination under 42 U.S.C. 421(h) to develop the record with regard to this alleged impairment."); *see also Robinson v. Astrue*, 365 F. App'x 993, 995-96 (11th Cir. 2010) (ALJ had no duty, in social security disability benefits case, to consider and make findings

regarding claimant's chronic fatigue syndrome (CFS), where claimant did not allege that she was disabled due to CFS either when she filed her claim or at her hearing).

*Street*, *Terrell*, and *Robinson*, incidentally, reference the ALJ's duty to develop the record -- a point Parrish complains about here. Doc. 18 at 6 (insisting that the ALJ did not have enough information to reject the mental impairment claim and thus, the case should be remanded for that purpose). It is true that, "[b]ecause a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)); 1 Soc. Sec. Disab. Claims Prac. & Proc. § 16:6 (2nd ed. Aug. 2014) ("An ALJ is required to fully develop each case. This duty exists even if claimant is represented; but it is enhanced when the claimant is unrepresented, illiterate, mentally handicapped, unable to speak English, or a combination of such factors.") (footnotes omitted).

But that duty must be viewed in context. A claimant can't simply say "I'm disabled" and then demand that the SSA go find evidence to support that conclusion. That is why the initial burden to adduce

evidence falls on the claimant, and the record-development duty is triggered only after the claimant has adduced at least the basic foundation of his claim -- through his own medical and other records. Courts, for that matter, sometimes gloss over this distinction:

> Generally, the burden to prove disability in a social security case is on the claimant, *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), but a social security disability hearing is nonadversarial, and thus the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing *consistent with the issues raised*" in that hearing. *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir.1993). When he considers an issue, an ALJ "has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir.1996).

*Grogan v. Barnhart*, 399 F.3d 1257, 1263-64 (10th Cir. 2005) (emphasis added).

But case law clarifies that an ALJ's duty to further develop the record unfolds only where a claimant first satisfies his initial evidentiary burden and a further development of the record, pro or con, would assist the disability determination. *Robinson v. Astrue*, 2009 WL 700414 at * 5 (M.D. Ga. Mar.13, 2009) ("As the Regulations state, the burden of proving that [a claimant] is disabled is on the Claimant. . . .

That means that [i]n an action seeking disability benefits, the burden is upon the claimant to demonstrate existence of a disability as defined by the Social Security Act. . . . It is, therefore, not the responsibility of the ALJ to analyze each and every impairment listed by the claimant in her medical records to determine if that impairment causes or contributes to a claimant's inability to work. It is the sole responsibility of the claimant to do so. To require that the ALJ address every impairment mentioned in a claimant's medical records to determine its severity would remove the burden from the Claimant and place it squarely on the shoulders of the Commissioner."), *aff'd*, 365 F. App'x 993 (11th Cir. 2010); *T.R.C. ex rel. Boyd v. Comm'r, Soc. Sec. Admin.*, 553 F. App'x 914, 919 (11th Cir. 2014) ("Generally, an ALJ has 'a basic obligation to develop a full and fair record.' *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Nevertheless, the claimant carries the burden of proving that she is disabled, and, thus, is responsible for producing evidence to support her claim. *Id.* Moreover, the ALJ is not required to order a consultative examination if the record contains sufficient evidence for the ALJ to make an informed decision.").[3]

---

[3] *See also Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir.

14

Parrish was 59 at the time of the hearing, and he tendered just one page of his school record listing the scores and abbreviated test types like "Calif. M. M." Doc. 17-6 at 35. The scores range from 40 to 72, but include no scale, percentile, or whether they were considered valid by the tester(s). *Id.* The SSA regulations, meanwhile, informed this claimant that IQ test results "are only part of the overall assessment." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00D6a ("The results of standardized intelligence tests may provide data that help verify the presence of intellectual disability. . . . However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation.").

Parrish thus adduced that one page of evidence in the face of precedent instructing that IQ tests cannot, standing alone, support an

---

2007); *Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) (the ALJ "has a duty to develop the record *where appropriate* but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision") (emphasis added); *Graham*, 129 F.3d at 1422 ("The court should be guided by whether the record reveals evidentiary gaps which result in *unfairness* or 'clear prejudice.'") (emphasis added); *Threatt v. Colvin*, 2015 WL 71746 at * 7 (N.D. Ala. Jan. 6, 2015); 4 Soc. Sec. Law & Prac. § 52:23 (*Duty to fully and fairly develop record*) (June 2015) (collecting cases).

impairment/disability finding. *Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 913 (11th Cir. 2015); *Popp v. Heckler*, 779 F.2d 1497, 1500 (11th Cir. 1986) ("[T]he ALJ [is] not required to find that [a claimant is] mentally [disabled] based on the results of the IQ test. The ALJ is required to examine the results in conjunction with other medical evidence and the claimant's daily activities and behavior."), cited in *McCaskill v. Dep't. of Health and Human Servs.*, 2015 WL 1457514 at * 6 n. 1 (S.D. Miss. Mar. 30, 2015). Parrish therefore did not bring his case to the critical mass necessary to trigger the ALJ's independent duty to develop the record. As the ALJ said: "The only available evidence reasonably related to the claimant's alleged mental impairments are old school records which do not show any evaluation or *acceptable* tests. [Cite]. Furthermore, [Parrish] failed to attend a scheduled psychological consultative examination." Doc. 17-2 at 25 (emphasis and footnote added).

The ALJ therefore was authorized to reject Parrish's showing outright. *Strunk v. Heckler*, 732 F.2d 1357, 1360 (7th Cir.1984) ("The plaintiff has failed to supply this court, nor have we found any case law requiring the Secretary to make a finding of mental [disability] based

16

solely upon the results of a standardized intelligence test . . . .").[4] As in the *Charles* case, this Court agrees "with the Commissioner that the evidence does not support a finding that plaintiff[']s alleged mental impairment, mild mental retardation, imposes an additional and

---

[4] It is not enough to simply dig up an old school report card reflecting raw IQ test scores and rest on them -- essentially what Parrish has done here. As the Eleventh Circuit explains:

> [A] claimant's mental retardation satisfies the criteria in paragraph C of Listing 12.05 when there is: (1) a "valid verbal, performance, or full scale IQ of 60 through 70"; *and* (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* § 12.05(C); *see also Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001) ("[A] claimant meets the criteria for presumptive disability under Listing 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 and evidence of additional mental or physical impairment.").

*Hickel v. Commr. of Soc. Sec.*, 539 F. App'x 980, 983 (11th Cir. 2013) (emphasis added). Furthermore, the evidence must demonstrate or support onset of the claimed impairment before age 22. *Id.* For that matter,

> 'a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.' *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992); *see also Popp v. Heckler*, 779 F.2d 1497, 1499–1500 (11th Cir. 1986) (stating that the ALJ may disregard IQ test results that are inconsistent with other record evidence because the regulations require the ALJ to examine intelligence tests and other evidence, such as the medical report and the claimant's daily activities and behavior).

*Id.* at 984. Parrish has come nowhere close to meeting his initial evidentiary burden in this case. *Terrell*, 2015 WL 328844 at * 9 n. 7 ("[S]tandardized intelligence tests are required in order determine whether a claimant meets certain mental retardation listings, such as Listing 12.05C. *See* 20 C.F.R., Pt. 404, subpt. P, App. 1, § 12.00D(6)(b). However, no such testing was required [where] the record . . . does not contain any credible evidence of mental retardation that me[ets] the threshold criteria of being a medically determinable impairment under the regulations.").

significant work related limitation or function." *Charles*, 2015 WL 2084665 at * 9; *see also McCaskill v. Dep't Health and Human Serv.*, 2015 WL 1457514 at * 9 (S.D. Miss. Mar. 30, 2015) (though the claimant had a 69 IQ, other evidence showing his adaptive skills supported ALJ's no-disability determination) (citing *Muse v. Sullivan*, 925 F.2d 785, 789-90 (5th Cir. 1991) (finding substantial evidence supported the ALJ's finding that claimant was not mentally disabled notwithstanding an IQ score of 58 based, in part, on the fact that "[t]here was no evidence in the record that [the claimant] had ever been fired from a job because he could not comprehend, remember, or carry out the mental . . . duties" and thus the claimant's "work experience belie[d] that he was [mentally disabled]")).

Finally, even after a claimant has met his initial burden, and can show that the ALJ should have further developed the record, he must still show prejudice. *Townsend v. Comm'r of Soc. Sec.*, 555 F. App'x 888, 892 (11th Cir. 2014) (even if record before ALJ was insufficient for entry of decision on claimant's disability benefits application, claimant was not prejudiced by ALJ's decision not to seek additional expert testimony, since there was no suggestion that other available witnesses

would have helped his case, and, in fact, opposite appeared likely). Parrish has shown no prejudice here. He has not even hinted at what other evidence exists to show that, were remand ordered, he could meet the extensive IQ-based, mental-impairment criteria set forth above.

## III. CONCLUSION

The Commissioner correctly found that Parrish had constructively waived his right to appear before the ALJ for a hearing. Substantial evidence supports the ALJ's decision and the Commissioner's ruling. Therefore, the Commissioner's decision should be **AFFIRMED**.

**SO REPORTED AND RECOMMENDED**, this 15Th day of June, 2015.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA